# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

VALERIE UPDEGRAFF,

      Plaintiff,

      v.                                          Case No. 06-C-893

MICHAEL J. ASTRUE,[1]
 Commissioner of the
 Social Security Administration,

      Defendant.

# DECISION AND ORDER

## NATURE OF CASE

      The plaintiff, Valerie Updegraff, commenced this action on August 16, 2006, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

## PROCEDURAL HISTORY

      On April 12, 2004, the plaintiff filed applications for disability insurance benefits, alleging that she became disabled on October 22, 2003, due to degenerative disc disease (status post

---

[1]The court has amended the caption to substitute Michael J. Astrue, Commissioner of the Social Security Administration, as the defendant in this case. On February 12, 2007, Michael J. Astrue became Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

discectomy in July 2003 and spinal fusion in January 2004) and obesity.[2] The plaintiff's application was denied initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on April 25, 2006. The plaintiff, represented by counsel, appeared and testified. Ronald E. Raketti, a vocational expert, also testified at the hearing.

In a May 19, 2006, decision, the ALJ found that the plaintiff has degenerative disc disease and obesity, but that these impairments do not meet or equal in severity the requirements of any of the medical listings in Appendix 1, Subpart P, Regulations No. 4. He further found that the plaintiff has the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, alternate sitting and standing at will throughout an eight hour workday, walk four to eight hours of a workday, perform limited bending and stooping, and perform unlimited pushing, pulling, handling (gross manipulation) and fingering (fine manipulation), but that she cannot twist, squat, crouch, crawl, or climb stairs, ladders or ropes. The ALJ also found that the plaintiff does not have the residual functional capacity to perform her past relevant work. He further found that the plaintiff's testimony was not fully credible or consistent with the record considered as a whole.

Based on the testimony of the vocational expert, and using Rules 202.20 and 202.13, Appendix 2, Subpart P, Regulation No. 4 as a framework for decision making, the ALJ determined that jobs that the plaintiff is able to perform, such as cashier, order clerk and final assembler, exist in significant numbers in the national economy. Therefore, the ALJ concluded that the plaintiff was not under a disability as defined by the Social Security Act. The ALJ's

---

[2]According to the administrative law judge, plaintiff's counsel amended the alleged onset date to June 15, 2003, at the hearing.

decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

On November 14, 2006, based on its review of the medical records and information, including updated medical reports, the Social Security Administration determined that the plaintiff was disabled as of July 20, 2006. Prior to that date, the Social Security Administration determined that the plaintiff's conditions were not totally disabling under Social Security rules.

The plaintiff seeks reversal of the ALJ's decision or, in the alternative, a remand under sentence four of 42 U.S.C. § 405(g) for further proceedings pertaining to the closed period from October 22, 2003, to July 19, 2006. (Plaintiff's Reply Brief at 6). Since the history of this case is well summarized in the record, the court will only engage in a limited discussion of the facts relevant to this decision.

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a plaintiff must demonstrate that her physical or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment which exists in the national economy considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently unemployed; 2) whether the plaintiff has a severe impairment; 3) whether her impairment meets or equals one of the impairments listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff possesses the residual functional capacity (RFC) to perform her past relevant work; and 5) whether the plaintiff is capable of performing any other work existing in significant numbers in the national economy given her age, education, and work experience. See Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-3 (7th Cir. 1993). If a plaintiff satisfies steps one, two and three, she will automatically be found disabled. If a plaintiff satisfies steps one and two, but not three, then she must demonstrate that she lacks the residual functional capacity to perform her past work. Once step four is satisfied, the burden shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy. Knight, 55 F.3d at 313. The plaintiff bears the burden at steps one through four, after which at step five, the burden shifts to the Commissioner. Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). The process is sequential, and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, Appendix 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (her maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than her vocationally relevant past work.

-4-

Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Haynes v. Barnhart, 416 F.3d 621, 627 (7th Cir. 2005). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Id. at 627-8.

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work she is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Sheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## ANALYSIS

The plaintiff challenges the ALJ's decision on several grounds which impact the ALJ's residual functional capacity assessment. First, she asserts that the ALJ's conclusions that her activities of daily living demonstrate that her complaints of severe pain are exaggerated and that she can sustain performance of the full range of light work are not supported by substantial evidence. Second, she maintains that the ALJ improperly rejected the opinions of the plaintiff's treating orthopaedic surgeon, James Stoll, M.D. Third, the plaintiff states that the ALJ failed to properly assess her limitations with prolonged sitting and standing. Finally, the plaintiff contends that the ALJ failed to properly assess the credibility of her testimony. The Commissioner asserts that the plaintiff's arguments are without merit and that the ALJ's decision is supported by substantial evidence.

-6-

**1.    Whether the ALJ's Conclusions Regarding the Plaintiff's Activities of Daily Living Are Supported By Substantial Evidence.**

In his denial of benefits, the ALJ relies, in part, on the plaintiff's activities of daily living to conclude that the plaintiff has the residual functional capacity to perform full time light work. (Tr. 18).  In challenging the ALJ's credibility determination, the plaintiff asserts that the ALJ selectively emphasized certain activities while ignoring those that detracted from his conclusions.  The plaintiff also maintains that the ALJ did not "build an accurate and logical bridge" between the plaintiff's activities and his conclusions that her testimony is exaggerated and that she can sustain performance of full time light work.  The plaintiff further contends that the ALJ failed to evaluate whether she can perform activities on a sustained basis.  The Commissioner contends that the ALJ properly assessed the plaintiff's subjective complaints of pain and limitations and found them less than credible.

The plaintiff's activities of daily living (ADLs) should be taken into consideration when searching for employment within the scope of the plaintiff's physical capabilities.  20 C.F.R. § 404.1529 (c)(3).  Listings of "minimal daily activities [however] do not establish that a person is capable of engaging in substantial physical activity." Clifford, 227 F.3d at 872.  The Court of Appeals for the Seventh Circuit has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006).  As stated in Patterson v. Barnhart, 428 F. Supp. 2d 869, 882 (E.D. Wis. 2006), "a social security claimant need not 'vegetate in a dark room excluded from all forms of human and social activity.'" Id. citing Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981).

-7-

The ALJ also must build an "accurate and logical bridge" between the claimant's activities and the ALJ's conclusions concerning the credibility of a claimant's testimony and her limitations. The ALJ may not selectively emphasize those activities the claimant is capable of performing without also considering the evidence of restrictions on activities that detract from the ALJ's conclusions. See Wates v. Barnhart, 274 F. Supp. 2d 1024, 1039-40 (E.D. Wis. 2003) (ALJ committed legal error where he selectively recited evidence concerning activities of daily living by, for example, noting that the plaintiff went grocery shopping, but ignoring that she only shopped when accompanied by her husband).

In his decision, the ALJ noted that the plaintiff's daily activities included walking on a treadmill or around her complex, visiting a friend occasionally, shopping with her husband, going to the doctor and going to therapy for 30 minutes twice a week. (Tr. 18). He also noted that the plaintiff testified that she took two and a half hour weekend trips to her trailer and that she could travel without difficulty. (Tr. 18). She also watched television, read and dusted. (Tr. 18). The ALJ concluded that the plaintiff's "statements regarding activities of daily living indicate that her symptoms are not as severe as alleged." (Tr. 18).

In her responses to the Physical Activities Questionnaire (Exhibit #3E) upon which the ALJ relied in part, the plaintiff indicated that she can walk about ten to 15 minutes on a treadmill or around her complex, sit for about ten minutes and stand for about 15-20 minutes. (Tr. 66-67). Contrary to the ALJ's decision, the plaintiff did not testify that she could travel without difficulty. Rather, she reported that her husband does most of the driving and that she could sit in a car for about two hours, but she would have "to make a few stops to get out and walk around a bit." (Tr. 67). She also testified that she cannot visit her father who lives in northern Wisconsin because it is too difficult for her to ride that long. (Tr. 350). Although the ALJ states

-8-

that the plaintiff spends weekends at her trailer, she actually testified that she and her husband go to the trailer a couple of weekends a month during the summer, but that they do not make the trip very often during the winter – "[M]aybe once every few months just to make . . . sure everything is okay." (Tr. 348).

The plaintiff also testified that her husband does most of the laundry, grocery shopping and cooking, although she might make a sandwich for herself during the day. (Tr. 346, 354). The plaintiff is able to do some dusting if she can sit on the floor, but a friend comes and cleans her house about every two weeks. (Tr. 68, 346). On a "bad day," which occurs a "couple days a week," she stated that it is very uncomfortable to do anything because of the bad back pains and that her most comfortable position is either reclining or lying down. (Tr. 353). She does not go out that often and visits her friend about once a month. (Tr. 66). During the hearing, the plaintiff stood three times because of the pain and leaned on her cane and the table for support. (Tr. 354, 359).

The court finds that the ALJ selectively emphasized certain activities and ignored activities that detracted from the ALJ's conclusion. For example, the plaintiff can dust, but she only dusts if she can sit on the floor to do so. The record shows that he plaintiff's house is cleaned by a friend. Moreover, the ALJ mischaracterized the plaintiff's testimony, for example, about her ability to travel. The plaintiff's testimony demonstrates that it is difficult for her to travel.

In addition, the ALJ failed to build the required accurate and logical bridge between the plaintiff's daily activities and the ALJ's conclusion that the plaintiff can sustain performance of full time competitive employment. The plaintiff's activities, such as sitting for a limited period of time in a car, sorting laundry, watching television and reading magazines, do not support the

-9-

conclusion that the plaintiff can perform full time competitive work. See Zurawski, 245 F.3d at 887 (finding that washing dishes, helping children prepare for school, doing laundry and preparing dinner are fairly restricted daily activities that do not undermine or contradict a claim of disabling pain); Dominguese v. Massanari, 172 F.Supp.2d 1098, 1099 (E.D. Wis. 2001) (finding that the ALJ failed to explain how the plaintiff's activities of arranging flowers, painting pots and reading were inconsistent with the level of plaintiff's described pain or demonstrative that the plaintiff could perform competitive work).

An ALJ's credibility determination is entitled to special deference because the ALJ is in the best position to see and hear the claimant and assess her forthrightness. Powers, 207 F.3d at 435. However, the court need not defer to a credibility determination based on a misstatement or misunderstanding of the evidence. See Sarchet v. Chater, 78 F.3d 305, 307-8 (7th Cir. 1996). When assessing credibility, the ALJ's decision must "be sufficiently specific to make clear . . . the weight [given] to the individual's statements and the reasons for that weight." SSR 96-7p.

In sum, the ALJ's findings regarding the plaintiff's activities of daily living are based upon a mischaracterization of the evidence and the plaintiff's testimony. The ALJ's failure to properly evaluate the plaintiff's activities of daily living and build an "accurate and logical bridge" to the ALJ's determination of residual functional capacity requires reversal. For these reasons, the matter will be remanded for a re-evaluation of the plaintiff's activities of daily living and overall credibility.

-10-

**2.____Whether The ALJ Properly Evaluated the Opinion of the Plaintiff's Treating Physician.**

The plaintiff argues that the ALJ improperly rejected the opinions of plaintiff's treating orthopaedic surgeon, Dr. Stoll. Instead, the ALJ relied on the opinions of the state agency nonexamining physician who concluded that the plaintiff could perform light work. The plaintiff contends the contradictory opinion of a nonexamining physician is not sufficient to justify rejecting the opinion of a treating physician. To the contrary, the Commissioner contends that the ALJ set forth good reasons for finding that Dr. Stoll's assessment of the plaintiff's physical capacity was inconsistent with the medical record and therefore not entitled to controlling weight.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by the medical findings and consistent with other substantial evidence in the record. Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004); Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001); Clifford, 227 F.3d at 870; see also 20 C.F.R. § 404.1527(d)(2); SSR 96-8p. "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Knight, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527[c]; Luna v. Shalala, 22 F.3d 687, 690 [7th Cir. 1994]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 [10th Cir. 1994]). The ALJ "must articulate, at some minimum level, [his] analysis of the evidence. Dixon, 270 F.3d at 1176 (citing Zurawski, 245 F.3d at 888). The ALJ is not required to address every piece of evidence or testimony, but the ALJ must provide "some glimpse into [his] reasoning." Id. An ALJ may discount a treating doctor's medical opinion if it is internally inconsistent, as long as he "minimally articulate[s] his

-11-

reasons for crediting or rejecting evidence of disability." Skarbek, 390 F.3d at 503 (quoting Clifford, 227 F.3d at 870).

Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of treating physicians. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). In any event, a treating physician's statement that the claimant is disabled cannot itself be conclusive; the ultimate determination of whether a claimant is disabled is "reserved to the Commissioner." See 20 C.F.R. § 404.1527(e)(1); see also, Dixon, 270 F.3d at 1177 ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." [internal citations omitted]).

Section 404.1527(d) of Title 20, Code of Federal Regulations, states that when the Social Security Administration does not give the treating source's opinion controlling weight, it will apply factors as set forth in the regulations. The factors to be considered are the examining and treatment relationship, the frequency of examinations, the nature, length, and extent of the treatment relationship, the supportability of a particular opinion, its consistency with the record as a whole, the specialization of the physician, and other factors. 20 C.F.R. § 404.1527(d)(1)-(6).

The plaintiff's primary impairment is chronic severe low back and leg pain. The plaintiff injured her back at work on February 21, 2003. (Tr. 81, 128). On July 8, 2003, the plaintiff underwent a lumbar laminectomy surgery performed by Dr. Stoll. (Tr. 128, 237). The plaintiff underwent several treatments including physical therapy, exercises and a series of epidural steroid injections. (Tr. 91, 94, 98-99, 125, 127, 254). She was also prescribed various

-12-

medications, but her symptoms did not improve. (Tr. 92, 124, 125). In October and November, 2003, MRI and EMG/NCS test results confirmed the disc herniations at L3-4 and L4-5, as well as lumbar radiculopathy. As a result, the plaintiff underwent a lumbar fusion surgery on January 30, 2004, which was performed by Dr. Stoll. (Tr. 129, 131-2). As noted by the ALJ, prior to her work injury and surgeries, the plaintiff had an excellent work history having worked 24 years as a warehouse worker "which indicates a motivation to work." (Tr. 18). She discontinued working on October 2003, due to severe pain. (Tr. 54).

After the lumbar fusion surgery in January 2004, the ALJ noted that the neurological findings were normal, specifically, that the plaintiff had normal muscle strength, intact sensation and equal reflexes. (Tr. 16). The ALJ further noted that an EMG and nerve conduction studies in August 2004, revealed improvement from the previous study, and that there was no active root denervation. (Tr. 6, citing Tr. 89). He also stated that an August 2004, report indicates that the neurological abnormalities that were present prior to the surgery had been corrected. Id.

The ALJ stated that the plaintiff's examinations beginning in January, 2005, showed bilateral tension signs, weakness in the left leg, and numbness and tingling in the right leg in the L5 dermatone. (Tr. 16). The plaintiff was described as having "intermittent" radiculopathy. (Tr. 16, citing Tr. 281, 284). The ALJ noted that there was "no mention of limitation of motion of the spine, a positive straight leg raising test or muscle atrophy" and that "although she was described as using a cane intermittently to walk, there is no evidence that a cane was prescribed." (Tr. 16). The ALJ further observed that after surgery in April 2004, the plaintiff acknowledged that her pain was diminishing. The ALJ asserted that there is "no evidence after April 2004 indicating that the claimant was precluded from performing limited light work." (Tr. 17).

-13-

On December 21, 2004, Dr. Stoll completed a Lumbosacral Spine Impairment Medical Assessment Form in which he stated that the plaintiff's diagnosis is L3 radiculopathy and that her prognosis was poor. (Tr. 276). Dr. Stoll characterized the plaintiff's pain as moderate as opposed to mild or severe. (Tr. 276). Dr. Stoll limited the plaintiff to a maximum sitting tolerance of 30 minutes and a maximum standing tolerance of 20 minutes. (Tr. 278). Dr. Stoll opined that the plaintiff can sit and stand/walk less than two hours in an eight hour work day. Dr. Stoll further opined that the plaintiff would need periodic unscheduled rest breaks during the daytime, that she can rarely lift and carry less than 10 pounds, that she never can carry more than 10 pounds and that she cannot twist or stoop at the waist. (Tr. 279). Dr. Stoll opined that the plaintiff would be absent from work more than four days a month due to her impairments. (Tr. 279).

The ALJ considered the medical assessment of Dr. Stoll, but decided not to give it controlling weight. He stated that although Dr. Stoll diagnosed radiculopathy, there were no EMG or nerve conduction studies after the January 2004, fusion that support this diagnosis. (Tr. 17). He also observed that radiographic studies after the surgery revealed stable post-operative changes and that none of these studies had findings showing that further surgery was required.

The evidence of record shows that in August, 2004, Dr. Stoll noted that the EMG showed that the plaintiff's neurological abnormalities had been corrected with no evidence of any severe or active nerve degeneration. (Tr. 87-89). Dr. Truong, the physician who performed the EMG study, observed normal motor strength, as well as normal sensations in both legs. (Tr. 250). These clinical findings were the most recent clinical findings that preceded Dr. Stoll's December 2004, assessment. The ALJ stated that while examinations beginning in January 2005,

-14-

revealed some neurological deficits, "there was no mention in Dr. Stoll's treating records of muscle atrophy, a positive straight leg raising test or limitation of motion of the spine." (Tr. 17).

The ALJ concluded that Dr. Stoll's opinion also was inconsistent with the opinion of the state agency physician. The state agency reviewing physician concluded that the plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk about six hours in an eight hour workday, sit about six hours in a workday, and occasionally climb stairs, balance, stoop, and crouch, but never climb ladders, kneel or crawl. (Tr. 16, citing Exh. 7F [Tr. 268-275]). Overall, the ALJ concluded that "[t]here have been no objective clinical findings documented for 12 consecutive months establishing that light work as set out herein was precluded." (Tr. 17).

The plaintiff contends that the ALJ was incorrect to rely on the opinion of the nonexamining state agency physician and cites Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003). In Gudgel, the court held that "an ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." Id. at 470.

In this case, the ALJ adequately articulated his reasons for not giving controlling weight to Dr. Stoll's assessment of December 2004. The ALJ noted that although Dr. Stoll diagnosed radiculopathy, there were no EMG or nerve conduction studies after the January 2004, fusion that supported this diagnosis. The radiographic studies after the surgery revealed stable post-operative changes. The EMG studies in August 2004, showed normal results in the lower extremities, interval improvement in the right § nerve conduction and no evidence of active root denervation. (Tr. 250-51). The ALJ found internal inconsistencies within the assessment of Dr. Stoll, set forth his reasons for discounting Dr. Stoll's assessment and relied on the state agency

-15-

physician. Contrary to the plaintiff's argument, the ALJ relied on more evidence than just the opinion of the nonexamining state agency physician. The ALJ determined that the assessment of Dr. Stoll was internally inconsistent, as well as inconsistent with the medical record. Therefore, the ALJ was not obligated to give the December 2004, assessment of Dr. Stoll controlling weight.

The plaintiff further argues that the ALJ ignored medical evidence. In April 2004, the plaintiff acknowledged that her pain level was diminishing and that she was taking less medication. This is noted in the ALJ's decision. The ALJ then stated that the record is devoid of any evidence after April 2004, which indicated that the plaintiff was precluded from performing limited light work. The plaintiff points to a physical therapy progress report on April 23, 2004, which noted that the plaintiff's "[a]ctive range of motion of the spine was severely restricted through all cardinal plane movements. . . .[P]assive straight leg raise was 45 degrees bilaterally. The patient ambulates with a cane in her left hand using a slow cadence." (Tr. 98). The Commissioner counters that a physical therapist is not considered an acceptable medical source. See 20 C.F.R. § 404.1513(a). While an examination performed by a physical therapist is not considered an acceptable medical source under the Commissioner's regulations in order to establish an impairment, a medical source, such as a physical therapist is an "other source" that can be used to establish the severity of the plaintiff's impairment and how it affected her ability to work. Id. at 404.1513(d)(1).

The treatment notes after the surgery show that the plaintiff's pain was worsening and severe. On August 2, 2004, the treatment notes show that the plaintiff was "doing much worse. She has more leg pain. She is back walking with a cane and leaning on it quite heavily." (Tr. 91). On January 10, 2005, treatment notes confirmed increased pain, use of a cane to

-16-

ambulate, and mood and affect were quite irritable and tearful. (Tr. 284). On February 28, 2005, the plaintiff exhibited leg tremors with standing five minutes or more and more episodes of her leg giving out. (Tr. 281). In this progress note, Dr. Stoll opined that the plaintiff is not physically capable of returning to work given her current medications. (Tr. 281). On May 12, 2005, Dr. Stoll noted that the plaintiff exhibited more bad days than good days, her sleep was disturbed, and her leg weakness and dysesthesia continued. Dr. Stoll diagnosed chronic pain syndrome and L3 radiculopathy secondary to a herniated disc. (Tr. 310). On September 22, 2005, the plaintiff continued to complain of intermittent low back pain that at times was extreme and sometimes tolerable, more bad days than good days and medication that was becoming less effective to manage the pain. (Tr. 301). On December 22, 2005, the progress notes demonstrated the plaintiff's need to walk with a cane for balance, dysesthesia in her left leg and diminished motor power in both lower extremities with mild weakness of both dorsiflexors and quads. (Tr. 298). On March 30, 2006, the progress notes discussed continued leg weakness and a continued regimen of medications. (Tr. 295).

The court agrees that the ALJ failed to discuss the progress notes before and after the December 2004, assessment which called into question the plaintiff's capability to perform light work. The ALJ's statement that "[t]here is no evidence after April 2004 indicating that the plaintiff was precluded from performing limited light work" fails to acknowledge the medical evidence documenting the steady decline of the plaintiff after April 2004. Moreover, although the medical record does not document a cane being initially "prescribed," the evidence demonstrates that the plaintiff required the use of a cane to ambulate and that she leaned "quite heavily" on her cane. (Tr. 91, 98). On December 22, 2005, Dr. Stoll noted that due to continued dysesthesias in her left leg, diminished motor power in both lower extremities and

-17-

mild weakness, the neurological examination "continues to show the need to walk with a cane for balance." (Tr. 298).

In sum, the court concludes that the ALJ adequately articulated his reasons for discounting the December 2004, assessment of Dr. Stoll. However, the court further concludes that the ALJ failed to adequately evaluate all the medical evidence, and in particular, progress notes after April 2004. Consequently, the case is remanded for reconsideration of this medical evidence.

**3. Whether the ALJ Failed to Properly Assess the Plaintiff's Limitations with Sitting and Standing.**

In determining the plaintiff's residual functional capacity, the ALJ specifically limited the plaintiff to "unskilled" jobs that allow sitting and standing "at will." (Tr. 18). The ALJ concluded that based on the testimony of the vocational expert, the plaintiff is able to perform the following jobs that exist in significant numbers in the national economy: cashier, order clerk and final assembler. (Tr. 20). The plaintiff argues that the ALJ failed to properly assess the plaintiff's limitations with regard to a sit/stand option. The Commissioner counters that the vocational expert testified that an at will sit/stand option would eliminate most of the jobs elicited, but that it would not eliminate a security monitor position. (Tr. 359). Therefore, the plaintiff's argument is without merit because the testimony of the vocational expert is sufficient to demonstrate that employment is available to the plaintiff given the plaintiff's residual functional capacity. A security job monitor, however, is not listed in the ALJ's findings with regard to available jobs for the plaintiff.

The legal standard for RFC is set forth in <u>Patterson</u>, 428 F. Supp. 2d at 885-86. Residual functional capacity is the most an individual can do despite his impairments on a regular and

-18-

continuing basis, i.e., eight hours a day for five days a week, or an equivalent work schedule. In determining a plaintiff's RFC, the ALJ must consider both the "exertional" and "non-exertional" capacities for the individual. Exertional capacity refers to the plaintiff's abilities to perform seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling. Nonexertional capacity includes all work-related functions that do not depend on the individual's physical strength: postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking) and mental (e.g., understanding and remembering instructions and responding appropriately to supervision) activities. Id. at 886.

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. SSR 96-8p. "The ALJ must also explain how any material inconsistencies or ambiguities in the evidence were considered and resolved." Patterson, 428 F. Supp.2d at 886 (citing SSR 96-8p). A claimant limited in his or her capacity to sit or stand for prolonged periods often require the ability to sit and stand "at will." Depending on the frequency that the claimant requires such freedom to alternate between sitting and standing, the occupational base for performing work can be eroded. SSR 96-9p. "[M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12.

At the hearing, the vocational expert testified that the plaintiff could not perform her past relevant work. However, based on the hypothetical question posed by the ALJ which incorporated the plaintiff's residual functional capacity as determined by the ALJ, including the sit/stand option at will, the vocational expert testified that the plaintiff could perform unskilled

-19-

light jobs as a cashier, order clerk and final assembler. (Tr. 357-58). The plaintiff's attorney posed a hypothetical question to the vocational expert which incorporated Dr. Stoll's limitations of a continuous sitting tolerance of 30 minutes and a standing tolerance of 20 minutes and questioned whether that level of frequency of needing to change positions would affect the plaintiff's ability to do any of these jobs. (Tr. 359). The vocational expert testified that the order clerk and final assembler would be eliminated, but that the security monitor (a sedentary level job) would remain viable. The vocational expert did not opine specifically on the cashier position. The vocational expert further opined that the employer would have to allow for the sit/stand option to occur (i.e. the employer would need to be a "sympathetic employer") and consequently, a certain number of jobs would be eroded. (Tr. 358-60).

In this case, the residual functional capacity is not specific as to the frequency of the plaintiff's need to alternate sitting and standing. See SSR 96-9p ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). The ALJ should have been clearer and more specific as to the plaintiff's limitations regarding the sit/stand option and how his findings affect the number of jobs available to the plaintiff.

The Commissioner contends that even using the plaintiff's hypothetical question in order to determine available jobs, the security job monitor job is viable. The ALJ, however, did not list the security monitor job in his findings and did not explore in any requisite detail how the sit/stand "at will" option would impact available jobs. Given the court's conclusion with regards to the mischaracterization of the plaintiff's testimony and the failure to adequately address medical evidence, the court further remands the case for clarification of the jobs available to the plaintiff given the plaintiff's residual functional capacity and further specification of the requirement that the plaintiff can "sit/stand at will."

-20-

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **granted**

**IT IS FURTHER ORDERED** that this case be and hereby is **remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this decision**.**

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of January, 2008.

BY THE COURT:


___s/ Patricia J. Gorence_____
PATRICIA J. GORENCE
United States Magistrate Judge
